UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. |
| vs. ) | |
| ) | Violations: Title 18, United States Code, |
| JAMES M. VANI, and ) | Sections 1343 and 2 |
| OLABODE ROTIBI ) | |

JUDGE KENDALL
13 CR 0167
MAGISTRATE JUDGE MASON

### COUNT ONE

The SPECIAL JANUARY 2012 GRAND JURY charges:

1. At times material to this indictment:

    a. Company A owned units in a building located at 1351 North Ashland Avenue, Chicago, Illinois. Company A owed money to Diamond Bank and to Company B for its acquisition of the 1351 North Ashland Avenue building.

    b. Defendant JAMES M. VANI worked as a loan officer for First National Mortgage in Des Plaines, Illinois.

    c. Olanrewaju Okulaja referred buyers to defendant VANI to acquire mortgage loans to purchase properties.

    d. Defendant OLABODE ROTIBI was an appraiser who performed appraisals for Okulaja.

    e. Washington Mutual Bank FA ("WAMU") and CitiMortgage, a wholly-owned subsidiary of Citigroup, were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

    f. WAMU, CitiMortgage, and Homecomings Financial LLC, and others, were lenders that made loans secured by mortgages.

FILED

FEB 21 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

g. Lenders required applicants for mortgage loans to provide truthful information, including information about the sales price of the property and about the borrower's employment, income, financial condition, assets, liabilities, source of down payment, and intention to occupy the property, which information was material to the lenders' approval, terms, and funding of the loans.

h. Lenders sold the mortgage loans to other lenders and institutions. Lenders disclosed that the mortgage loans could be sold and the likelihood that the mortgage loans would be sold. The information provided in loan applications and supporting documents, including the sales price of the property and the borrower's employment, income, assets, liabilities, source of down payment, and intention to occupy the property purchased, was material to the successors' decision to purchase the mortgage loans.

i. The Federal National Mortgage Association, also known as Fannie Mae, and the Federal Home Loan Mortgage Corporation, also known as Freddie Mac, are government-sponsored enterprises chartered by Congress with a mission to provide liquidity, stability, and affordability to the United States housing and mortgage markets. As part of this mission, Fannie Mae and Freddie Mac purchase residential mortgages in the United States secondary market. Fannie Mae and Freddie Mac assist lenders by purchasing the loans they originate, enabling the lenders to replenish their funds to finance additional single family homes. The information provided in loan applications and supporting documents, including the sales price of the property and the borrower's employment, income, assets, liabilities, source of down payment, and intention to occupy the property purchased, was material to the decision by Fannie Mae and Freddie Mac to purchase the mortgage loans.

2. Beginning in or about December 2007, and continuing until in or about February 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES M. VANI, and
OLABODE ROTIBI,

defendants herein, along with others known and unknown to the Grand Jury, devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme affected financial institutions, and is further described below.

3. It was part of the scheme that defendants JAMES M. VANI and OLABODE ROTIBI fraudulently obtained a total of at least approximately $2,130,788.90 in mortgage loans proceeds from lenders and, for the purpose of executing the scheme, caused interstate wire transmissions to fund these mortgage loans.

4. It was further part of the scheme that Okulaja agreed with the owner of Company A to sell the units in the 1351 North Ashland Avenue building. Under the agreement, the mortgage loan proceeds received from the sale of units would be used to pay off Company A's indebtedness to Diamond Bank and Company B with any remaining proceeds paid to Okulaja to disburse to himself and others, including defendants VANI and ROTIBI for their assistance in securing the mortgage loans for nominee buyers to purchase the units.

5. It was further part of the scheme Okulaja caused to be created an Illinois corporation entitled "1351 N. Ashland 1, Inc." ("1351 NA 1") as the means for Okulaja to acquire proceeds from the sale of units in the 1351 North Ashland Avenue building. The name "1351 NA 1" was a close variation of Company A's name. An individual, Person A, was listed as the President of 1351 NA

1.

6. It was further part of the scheme that Company A issued a Warranty Deed to 1351 NA 1 for the 1351 North Ashland Avenue building.

7. It was further a part of the scheme that Okulaja caused others, including Person A, to recruit buyers for the units in the 1351 North Ashland Avenue building.

8. It was further part of the scheme that Okulaja obtained false employment documentation in the names of the nominee buyers for use in fraudulent mortgage loan applications.

9. It was further part of the scheme that defendant ROTIBI knowingly prepared false appraisals for the 1351 North Ashland Avenue building in which ROTIBI overstated the value of the units in order for the unit to qualify for a mortgage loan in a higher amount. Okulaja paid defendant ROTIBI additional money than that disclosed to the lender for each fraudulent appraisal defendant ROTIBI prepared.

10. It was further part of the scheme that defendant VANI submitted and caused to be submitted to lenders mortgage loan applications which, as defendant VANI well knew, contained materially false statements concerning the nominee buyer's employment, income, assets, liabilities, and intention to occupy the residence being purchased. Okulaja paid defendant VANI additional money than that disclosed to the lender for each fraudulent loan application defendant VANI processed that resulted in funding through a mortgage loan.

11. It was further part of the scheme that defendant VANI served as the loan officer on the sale of Units 1C, 2C, 2B, 3B, and 3C in the 1351 North Ashland Avenue building.

12. It was further part of the scheme that, on or about February 25, 2008, JG, a nominee buyer, purchased Unit 2B in the 1351 North Ashland Avenue building with a mortgage loan obtained

from Homecomings Financial LLC through the use of false statements. The loan was later purchased by Fannie Mae and then taken back by the lender who acquired the loan after being issued by Homecomings Financial LLC.

13. It was further part of the scheme that, on or about February 26, 2008, JG, a nominee buyer, purchased Unit 3B in the 1351 North Ashland Avenue building with a mortgage loan obtained from WAMU through the use of false statements.

14. It was further part of the scheme that defendants VANI and ROTIBI did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purpose of those acts, beyond those acts of concealment set forth above.

15. On or about February 25, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES M. VANI, and
OLABODE ROTIBI,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Dallas, Texas, to Chicago, Illinois, certain signs, signals and sounds, namely, an interstate wire transfer of approximately $267,778.18, which funds were the proceeds of a mortgage loan made by Homecomings Financial, LLC for the purchase of Unit 2B at 1351 North Ashland Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 14 of Count One are realleged and incorporated as though fully set forth herein.

2. On or about February 26, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMES M. VANI, and
OLABODE ROTIBI,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Stockton, California to Illinois, certain signs, signals and sounds, namely, an interstate wire transfer of approximately $596,263.46, which funds were the proceeds of a mortgage loan made by WAMU for the purchase of Unit 3B at 1351 North Ashland Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2012 GRAND JURY further alleges:

1. The allegations of Counts 1 through 2 of this Indictment are realleged and incorporated by reference as if fully restated herein for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1343, as alleged in the foregoing Indictment,

> JAMES M. VANI, and
> OLABODE ROTIBI,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest they may have in any property, real and personal, involved in the wire fraud offenses, and traceable to the property involved in the offenses, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

3. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), include the sum of approximately $2,130,788.90.

4. By virtue of the commission of the offenses charged in Counts 1 and 2 of this Indictment by the defendants, all right, title or interest that defendants have in the above-described property is vested in the United States and hereby forfeit pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

5. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value;

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY