IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 13 CR 167 |
| | ) | |
| JAMES M. VANI, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 21, 2013, a grand jury returned a two-count Indictment against Defendant James M. Vani charging him with wire fraud in violation of 18 U.S.C. § 1343 for his participation in in a mortgage fraud scheme. (Dkt. No. 1). Specifically, the Indictment alleged that Vani, as a mortgage loan officer, knowingly submitted mortgage loan applications containing materially false statements concerning the nominee buyer's employment, income, assets, liabilities, and intention to occupy the residence being purchased to mortgage lenders. (*Id.*). After a four-day trial, a jury convicted Vani of both counts. (Dkt. No. 119). Vani now moves for judgment of acquittal under Fed. R. Crim. P. 29, arguing that there was insufficient evidence demonstrating his actual knowledge of the falsity of any material statements found in the mortgage loan applications. Alternatively, Vani seeks a new trial under Fed. R. Crim. P. 33, alleging that the Court erred by: (1) barring the expert testimony of Neill Fendly; (2) admitting Vani's statements to an FBI agent in the Government's case in chief; (3) limiting the testimony of Vani's character witnesses; and (4) refusing to give a proposed jury instruction defining

material statements. Because there was more than sufficient evidence to support the jury's verdict and the law and facts support the Court's trial rulings, Vani's motions are denied.

## I. The Record Contained Ample Evidence to Support the Jury's Verdict

A motion for judgment of acquittal challenges the sufficiency of the evidence against a defendant. Fed. R. Crim. P. 29. Vani faces "a nearly insurmountable hurdle" in claiming that the jury had insufficient evidence to conclude that he had actual knowledge of the falsity of the statements contained in the mortgage loan applications that he submitted. *See United States v. Domnenko*, 763 F.3d 768, 772 (7th Cir. 2014) (citing *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). The Court now reviews the evidence in the light most favorable to the Government and makes all reasonable inferences in the Government's favor. *United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014); *United States v. Hassebrock*, 663 F.3d 906, 918 (7th Cir. 2011). The Court may overturn the jury's guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012)).

To prove Vani guilty of wire fraud, the Government had to prove (1) Vani's participation in a scheme to defraud, (2) his intent to defraud, and (3) his use of interstate wires in furtherance of the fraud. *See United States v. Durham*, 766 F.3d 672, 678 (7th Cir. 2014). "A scheme to defraud requires 'the making of a false statement or material misrepresentation, or the concealment of material fact.' " *United States v. Sloan*, 492 F.3d 884, 890 (7th Cir. 2007) (internal citation omitted). Vani contends that the Government failed to prove his intent to defraud because the evidence did not establish he knew that any of the statements within the mortgage loan applications were false. Vani's position at trial and in his motion for acquittal is

that he merely relied on the information provided to him by co-conspirator Olanrewaju Okulaja, another licensed loan officer. After listening to all of the evidence and judging the credibility of the witnesses, the jury found otherwise.

Despite Vani's cries of ignorance, the jury had plenty of reasons to believe that he was fully aware of the fraudulent mortgage scheme and willingly participated in it. "[I]ntent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Daniel*, 749 F.3d 608, 614 (7th Cir. 2014) (quoting *United States v. Sheneman*, 682 F.3d 623, 629 (7th Cir. 2012)). Here, it was entirely reasonable for the jury to conclude that Vani knew that the loan applications he submitted included false representations and statements regarding the alleged buyers.

The jury heard testimony that Vani served as the loan officer for buyers seeking mortgage loans for the purchase of condominium units at 1351 North Ashland Avenue in Chicago, Illinois. Specifically, FBI Special Agent Deborah Jones-Buggs testified that there were nine units in the 1351 Ashland building, seven of which were sold. Jones-Buggs further testified that Vani was the loan officer on a number of the sold units. Vani was the loan officer for three units in the building purchased by Mr. Semanyuk[1] and two other units in the building purchased by Jose Galindo.[2] Semanyuk purchased his three units utilizing three different mortgage-lending institutions while Galindo received loans from two lenders for his two units.

Judy Taylor, a representative from CitiMortgage, testified that CitiMortgage funded a loan to Semanyuk on January 31, 2008 to purchase Unit 1C of the 1351 Ashland building. Semanyuk indicated on his application that Unit 1C would be his primary residence, information

---

[1] Semanyuk purchased two units on January 31, 2008 and one unit on February 7, 2008.
[2] Galindo purchased one unit on February 25, 2008 and one unit on February 26, 2008.

that Taylor testified was important to CitiMortgage because a loan for a primary residence is considered lower risk compared to second home and investment properties. Taylor further stated that the application provided to CitiMortgage showed that Semanyuk had over $94,000 in a bank account and over $49,000 in a checking account. In truth, an MB Financial Bank statement for Semanyuk from January 6, 2008 showed a balance of only $22.22. Vani submitted the application on behalf of Semanyuk and provided the information to CitiMortgage. Taylor told the jury that CitiMortgage was not allowed to call Semanyuk to verify his information and therefore took the application at face value and relied upon it in determining whether to give Semanyuk a mortgage.

Similarly, Brett Hellstrom testified that Washington Mutual provided a loan to Semanyuk on February 7, 2008 for Unit 3C of the 1351 Ashland building. Vani also prepared this loan application for another unit within the same building just one month later. Having already told CitiMortgage that Unit 1C was his primary residence for Semanyuk, Vani told this second bank that Unit 3C would be Semanyuk's primary residence. Hellstrom testified similarly that Washington Mutual based its decision to loan money on whether a borrower would occupy the property because the risk to the bank is greater for second home and investment properties. In spite of Vani's role in aiding Semanyuk to obtain the CitiMortgage for Unit 1C, Vani submitted an application showing that Semanyuk had no existing mortgages and did not own any other units in the building. Vani's role in submitting this application occurred just three weeks after his role in aiding Semanyuk's purchase of Unit 1C with funding from CitiMortgage on January 31, 2008. Hellstrom testified that as a lender, Washington Mutual is uncomfortable with large concentrations of single investors because they cannot live in all the properties, thereby raising the risk of default. Washington Mutual issued an additional loan for Unit 3B in the 1351 Ashland

building to Jose Galindo for a closing on February 26, 2008. Vani was once again the loan officer and prepared the application just three weeks after the second loan that he helped obtain for Semanyuk. Galindo's application for Unit 3B stated that it would be his primary residence. Hellstrom said that the application showed Galindo's phone number to be 312-593-3007, a number that was actually associated with Okulaja's cellular phone. The application also claimed that Galindo was employed as a mechanical engineer, made $11,359.39 per month, and had over $142,000 in a Chase bank account. The loan application neglected to mention any other units owned by Galindo.

To further demonstrate the falsity of the information found on the loan applications submitted by Vani, the Government called Galindo as a witness. Galindo testified that his involvement with the 1351 Ashland building stemmed from a request from a friend of his to cosign a unit for the friend's father. Galindo agreed to help and gave the friend a copy of his driver's license. Galindo testified that he had no idea that, in actuality, he was purchasing Units 2B and 3B in the 1351 Ashland building. He said the phone number found on the loan applications filed under his name was not his number. He stated that he did not author the two letters submitted to the two different lenders with the applications submitted by Vani. Galindo testified that although his loan application stated he was unmarried at the time of the loan, he had actually been married since 1987. Galindo further testified that he never had any intention to live in either of the units as a "primary residence," despite both applications claiming he did. He also affirmed that he was not a mechanical engineer, made significantly less than the amount claimed on the applications, and never had over $100,000 in a Chase bank account.

After showing the jury that the information contained within the loan applications was materially false, the Government presented evidence linking Vani to the applications.

5

Specifically, the Government presented evidence that Vani was paid substantial sums of money for his efforts in getting the loan applications approved. Co-defendant, Olabode Rotibi, who pled guilty to being involved in the scheme and agreed to testify on behalf of the Government, testified about Vani's role, bolstering the jury's reasonable conclusion that Vani knowingly participated in the mortgage fraud scheme for personal financial gain. *See United States v. White*, 737 F.3d 1121, 1130 (7th Cir. 2013) ("Intent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self . . ."). Rotibi testified that the transactions surrounding the 1351 Ashland building were carried out by Okulaja, Vani, and himself. Vani operated as the loan officer and Rotibi performed the appraisals for the units. Rotibi told the jury that he and Okulaja visited Vani at his home three times during the existence of the mortgage fraud scheme. Rotibi further testified that conversations between Vani and Okulaja demonstrated a disagreement between the two regarding Okulaja's payments to Vani for his involvement in the scheme. Vani thought he would receive $10,000 for his role. After the first closing on one of the 1351 Ashland units, Okulaja gave Rotibi an envelope of money to give to Vani. Rotibi testified that he delivered the envelope of cash to Vani.

Particularly damaging to Vani's argument that the Government presented insufficient evidence to demonstrate that Vani had actual knowledge of the falsity of the information he submitted on the loan applications is his statement to Special Agent Alexander McDonald.[3] McDonald testified that in 2007 and 2008, he investigated Vani's involvement in the sales of the 1351 Ashland units. On October 7, 2008, McDonald interviewed Vani at his home. McDonald testified that Vani told him he wanted to help and get everything out in the open. Specifically

---

[3] Vani contests the admissibility of his statement to the agent. The Court addresses this argument in further detail later in this Opinion, but Vani's statement is admissible pursuant to Federal Rule of Evidence 801(d)(2)(A).

regarding the Galindo units, McDonald told the jury that Vani told him that he knew the cell phone number listed as Galindo's was actually Okulaja's. Vani also recognized that both Galindo loan applications were submitted as primary residence loans and told McDonald that he knew there was no legitimate way to submit two primary residence mortgage applications for the same buyer. Vani told McDonald that he submitted the applications to different lenders anyway because he was making a lot of money. As the two were talking, McDonald prepared a written statement. McDonald testified that he told Vani that he wanted Vani to review the statement and that he was under no obligation to sign it, but if he did, he would be adopting the statement as his own. Vani proceeded to read, review, edit, and ultimately sign the statement. The Court admitted the statement into evidence, at which point McDonald read from it. In his statement, Vani admitted that he "realized at some point that the information on the loan applications was false" but "thought that because [he] didn't get in any trouble after [a bank cut him off from doing loans with them], it might not be so bad." Vani further admitted in the statement that he "was making a lot of money, so [he] kept doing business with [Okulaja and Rotibi]." Regarding the Galindo applications specifically, Vani's statement read that he "knew that some of the information was false, but [he] really just didn't want to know the truth." Vani submitted the Galindo applications because he "knew [he] would make a lot of money and that was very hard to resist."

The Government's theory at trial was that Vani misrepresented the nominee borrowers' assets, liabilities, and intentions to occupy the charged units in order to receive the mortgage loan proceeds. Taking into consideration Vani's experience in the mortgage industry,[4] his indications on the various loan applications that each unit would be the borrower's "primary residence"

---

[4] Special Agent Christopher Lane testified that Vani was employed in the mortgage industry since the early 2000s.

despite the same borrower being listed for multiple units, his sending of the applications to different lenders in order to conceal the wrongdoing, his $10,000 payment from Okulaja, and his statement to Agent McDonald, there was ample evidence for the jury to conclude beyond a reasonable doubt that Vani knowingly submitted false information on the loan applications in order to secure the loans. *See Daniel*, 749 F.3d at 614 ("intent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self"); *Sheneman*, 682 F.3d at 630 (jury is well within reason to consider a defendant's involvement and experience in the real estate market when determining what the defendant could reasonably foresee being the consequences of his actions); *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010) ("[S]pecific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself."). Based on the record, a reasonable jury could conclude that Vani knew that an individual could not have multiple "primary residences" and only indicated that Semanyuk and Galindo intended to occupy the charged units in order to fraudulently secure the loans. Because there is more than sufficient evidence to support the jury's findings with respect to Vani's knowing and willful execution of the scheme and his intent to defraud, the Court denies Vani's motion for judgment of acquittal.

## II.   A New Trial is Not Warranted Because The Court Did Not Err

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion). "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's

verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) (" '[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.' ") (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989))), *overruled on other grounds*, 546 U.S. 12 (2005). But a jury verdict in a criminal case is not to be overturned lightly, and accordingly, a Rule 33 motion will not be granted lightly. *See United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). Here, none of Vani's arguments warrant a new trial.

### A. Neill Fendly's Expert Testimony

Prior to trial, Vani identified Neill Fendly as an expert witness who would testify about the accepted practices of the mortgage loan industry from 2007-2008. Essentially, Vani wanted to show that because the mortgage industry was lax in reviewing loan applications and this careless practice was rampant, he cannot be held liable for being a part of that lax system. The Government moved to exclude Fendly's testimony, arguing that Fendly lacked sufficient bases and reasons for his opinions and his proposed testimony was irrelevant to whether Vani received specific training to be careless in reviewing applications. The Court granted the Government's motion because the reliability of Fendly's opinions was impossible to determine due to his failure to present the methodology he used in coming to his conclusions and because Fendly's testimony concerned only irrelevant "industry-wide practices." *See generally* Dkt. No. 104. Vani contends that the Court erroneously barred Fendly's testimony because his proposed testimony about "industry-wide mortgage practices" would have corroborated Vani's testimony about how he had been taught to process mortgage loan applications. Vani wanted to testify that he was just doing what everyone else was doing – much like a driver who tells the police officer who pulls

9

him over for speeding that he was "going with traffic" when everyone else was breaking the speed limit.

As a preliminary matter, the Court notes that Vani failed to renew his request to call Fendly after Vani testified. *Cf. United States v. Mansoori*, 304 F.3d 635, 652 (7th Cir. 2002) (defendant could not complain about trial court's omission of cautionary instruction where he did not remind the judge to give the instruction). Regardless, Vani's argument was heavily litigated before trial and he offers no new support for his position that Fendly's testimony was admissible. As the Court ruled before trial, although Vani's intent to defraud was undoubtedly a relevant issue at trial and therefore any "statements and training conveyed to him" tending to demonstrate a lack of intent to defraud were admissible, Fendly's proposed testimony was not narrowly tailored to reach that result. *Cf. United States v. Lillie*, 669 F. Supp.2d 903, 909 (N.D. Ill. 2009) (defendant not foreclosed from advancing argument that he submitted a fraudulent document because he was misled). Here, Fendly's proposed testimony did not concern Vani's individual training, what others told him to do, or how others instructed him; instead, it bore only upon irrelevant industry-wide mortgage practices. *See United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) (argument that reasonable investigation by a lender would have prevented a fraudulent loan from closing was foreclosed because "the perpetrator of a fraud may not defend himself by blaming the victim for being duped"). Fendly's testimony was precisely the type of industry-wide practice testimony that had no actual connection to Vani's state of mind. *See United States v. Kokenis*, 662 F.3d 919, 930 (7th Cir. 2011) ("just because there may be evidence to show that someone could have had a good-faith belief that he wasn't violating the law" is irrelevant "without any connection to [the defendant's] state of mind"); *Serfling*, 504 F.3d at 679; *United States v. Wade*, 23 F.3d 411, at *4 (7th Cir. Apr. 21, 1994) (lending practices of a defrauded

bank irrelevant because focus of fraud statutes is on the intent of the defendant) (unpublished disposition). Fendly's proposed testimony is prohibited primarily because it misleads the jury and allows a jury to nullify the illegal behavior.

### B. Vani's Statements to an FBI Agent

Vani asserts the Court erred by allowing the Government to present his statements to Agent McDonald in its case in chief. Vani argues inexplicably that because he made the statements after the mortgage fraud scheme and conspiracy had ended, the statements are hearsay. The Court denies this basis for a new trial because Vani's statements to Agent McDonald are admissions and do not implicate the coconspirator statement rule. If the Court were to adopt this theory of hearsay, no confession after the commission of the crime could ever be admitted against a defendant at trial. That is not what the rule states.

A statement that "is offered against an opposing party and was made by the party in an individual or representative capacity" is not hearsay. Fed. R. Evid. 801(d)(2)(A). The rule concerning the admissibility of an opposing party's statement makes no reference to and does not rely upon the existence of a conspiracy. *See, e.g.*, *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993) (words and deeds of a defendant, while out-of-court statements, are admissions); *United States v. Kelly*, 261 F.R.D. 147, 152 (N.D. Ill. 2009) ("A defendant's own statements . . . are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule."); *United States v. Reyes*, No. 07 CR 126, 2008 WL 4686169, at *4 (N.D. Ill. May 8, 2008) (same). Because Vani's statements to Agent McDonald constitute admissions, *see United States v. Clark*, 649 F.2d 534, 543 (7th Cir. 1981) (defendant's statement to FBI agent after conspiracy ended was admissible under Rule 801(d)(2)(A) because it was an admission), the existence or lack thereof of an ongoing conspiracy at the time the statements were made is

irrelevant. No error was committed in admitting this confession statement against the defendant at trial.

C. **Character Witness Testimony**

Vani next argues, in two sentences, that the Court erred by limiting the testimony of his character witnesses. Vani includes neither authority for his position nor any detail on what the excluded testimony would have been. This argument is accordingly waived "because it is perfunctory and undeveloped." *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014); *Bass v. Jolier Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 n.1 (7th Cir. 2014) (without analysis or citation to authority, argument is waived).

Waiver aside, the Court did not improperly exclude any character witness testimony. Before Vani's character witnesses were placed on the stand, the Court ruled that although whether Vani's witnesses consider him to be a truthful and credible loan officer is relevant, any opinion or reputation testimony about whether "he's a great guy" is irrelevant. The Court accordingly sustained the Government's objection when Matthew Duda testified that Vani is "a good guy" and that Duda does not "hang with any bad people." On the other hand, however, Colin Evans testified that Vani's character for honesty and trustworthiness is "stellar" and "top notch." Evans further stated that Vani maintained a reputation as a very honest person among the community. Further, Clint Firestone, Vani's former coworker, testified that Vani is honest in all aspects of his life and that he is trustworthy, reliable, ethical, and does what is right for people. Firestone additionally told the jury that Vani is honest with all of his clients.

The jury was consequently fully apprised of the character witnesses' opinions of Vani's truthfulness. The Court therefore denies Vani's contention that the Court erroneously limited their testimony as a basis for a new trial.

### D. Material Statement Jury Instruction

Finally, Vani contends that the Court erred by giving the Government's proposed instruction on materiality instead of Vani's proposed instruction on the issue. Per Seventh Circuit Criminal Pattern Jury Instruction 18 U.S.C. §§ 1341 and 1343 Definition of Material, the Court gave the following instruction:

> A false or fraudulent pretense, representation, or promise is "material" if it is capable of influencing the decision of the persons to whom it was addressed.
> It is not necessary that the false or fraudulent pretense, representation, or promise actually have that influence or be relied on by the alleged victim, as long as it is capable of doing so.

The Court is "afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. Garrett*, 757 F.3d 560, 570 (7th Cir. 2014). Here, the Court's use of the Seventh Circuit Pattern instruction for the definition of "material" in the context of a wire fraud case over Vani's objection was neither error nor a basis for a new trial. The Court "presume[s] that the Pattern Criminal Jury Instructions for the Seventh Circuit correctly state the law." *United States v. Marr*, 760 F.3d 733, 744 (7th Cir. 2014) (citing *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006). Accordingly, the instruction given properly informed the jury on the law in this Circuit. *See Garrett*, 757 F.3d at 570 (instruction only improper if it "mislead[s] the jury by failing to correctly and sufficiently inform the jury of the applicable law"). Vani's motion for a new trial is denied.

## **CONCLUSION**

For the reasons stated herein, the Court denies Vani's motions for judgment of acquittal and for a new trial.

*[signature]*

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 2/23/2015